IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JULIANN SALISBURY,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br><br>    Defendant. | Case No. 2:05-CV-330 SA<br><br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Juliann Salisbury, asking the court to reverse the final agency decision denying her application for Disability Insurance Benefits (hereafter referred to as "DIB") under Title II of the Social Security Act. See 42 U.S.C. §§ 401-433 (2005). Plaintiff's application was denied because the Administrative Law Judge (hereafter referred to as "ALJ") found that Plaintiff had the residual functional capacity (hereafter referred to as "RFC") to perform her past relevant work, and therefore was not disabled. Plaintiff now challenges the ALJ's decision by arguing that it is legally erroneous.

After examining the parties' memoranda and the record, the court has determined that oral argument would not materially

assist the determination of this case and has elected to determine Plaintiff's case on the basis of the written materials submitted to the court.  See DUCivR 7-1(f).  The court has carefully considered the memoranda and the complete record in this matter, and concludes that the ALJ's decision is legally erroneous because it does not explain why the ALJ did not adopt two critical opinions of Plaintiff's treating physician.  As a result, the ALJ's decision is reversed and remanded.

## BACKGROUND

Plaintiff applied for DIB in August 2002.  (File Entry #6, The Certified Copy of the Transcript of the Entire Record of the Administrative Proceedings Relating to Juliann Salisbury (hereafter referred to as "Tr. __"), 51.)  Plaintiff's claim was denied at the initial and reconsideration levels of administrative review.  (Tr. 37, 41.)  Plaintiff then requested a hearing before an ALJ, which was held on March 9, 2004.  (Tr. 36, 258-87.)

In his April 14, 2004 decision, the ALJ denied Plaintiff's claim, finding that Plaintiff could perform her past relevant work.  (Tr. 20, 21.)  On March 9, 2005, the Appeals Council denied Plaintiff's subsequent request for review (Tr. 3), making the ALJ's decision the Commissioner's final decision.  See 20 C.F.R. § 404.981 (2005); see also 42 U.S.C. § 405(g) (2005).

After receiving the Appeals Council's denial of her request for review, on April 13, 2005, Plaintiff filed a motion to

proceed *in forma pauperis* with this court.  (File Entry #1.) That same day, the court granted Plaintiff's motion and Plaintiff filed the instant action.  (File Entries #2, 3.)  The case was assigned to United States District Judge Tena Campbell.  (File Entry #3.)  On April 26, 2004, the parties filed a joint statement consenting to have the magistrate judge conduct all proceedings and enter the final judgment in this case pursuant to 28 U.S.C. § 636(c), and Judge Campbell referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(c).  (File Entry #4.)  Defendant then filed her answer, along with the administrative record, on June 20, 2005.  (File Entries #5, 6.)

On July 22, 2005, Plaintiff filed her brief in support of her petition for review.  (File Entry #9.)  On October 5, 2005, Defendant filed her answer brief.  (File Entry #12.)  On October 18, 2005, Plaintiff filed her reply brief.  (File Entry #13.)

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  The findings of the Commissioner, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g) (2005).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *see also Doyal v.* Barnhart, 331 F.3d 758, 760 (10th Cir. 2003); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Grogan*, 399 F.3d at 1261-1262 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)); *see also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) ("A finding of '"no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" (Citations omitted.)).

In conducting its review, the court must "examine the record closely to determine whether substantial evidence supports" the Commissioner's decision. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). However, the court may "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted); *see also Grogan* 399 F.3d at 1262 (noting that although the court does not reweigh the evidence, it must meticulously examine the record as a whole to determine if the substantiality test has been met).

4

The court's review also extends to determining whether the Commissioner applied the correct legal standards. *See Qualls*, 206 F.3d at 1371. Reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

**ANALYSIS**

Plaintiff makes only one main argument. Plaintiff argues that the ALJ erred by failing to discuss or adopt the opinions of Plaintiff's treating physician in two specific functional areas even though the ALJ accepted the opinions of Plaintiff's treating physician as consistent with the medical record. As explained below, both of the two opinions of Plaintiff's treating physician at issue in this appeal were critical to the determination of whether Plaintiff was disabled.

First, Dr. Carolyn Forbes, Plaintiff's treating physician, indicated in the Mental Work Capacity Evaluation form she completed on March 8, 2004, regarding Plaintiff, that Plaintiff has a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (Tr. 218.) Above the box Dr.

5

Forbes checked indicating this residual disease process are the directions that this box should only be checked if the situation was "manifested by a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation or ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."  (Tr. 218.)  This limitation indicated by Dr. Forbes is critical to the ALJ's determination of whether Plaintiff meets Listing 12.04 of the listing of impairments.  That listing provides, in relevant part:

> 12.04   Affective Disorders:
> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>     The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>         . . .
>     C.   Medically documented history of a chronic affective disorder of at least 2 year's duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>         . . .
>         2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.04. Therefore, Dr. Forbes' opinion as indicated by her checking the box on the Mental Work Capacity Evaluation form, supports a finding that Plaintiff's limitation meets the requirements of Listing 12.04. Added to the ALJ's existing finding that Plaintiff suffers from a depressive disorder, the indication in the record that Plaintiff's condition has existed for at least two years (Tr. 159), and the indications in the record that Plaintiff has had medications prescribed for depression for at least two years (Tr. 159, 225), the ALJ's checking the box on the form as described above is critical to the determination of Plaintiff's disability.[1]

Second, Dr. Forbes wrote in the RFC Questionnaire she completed on March 8, 2004, that Plaintiff would need to take "unscheduled breaks" or would need to have "periods of walking around during an 8-hour working day" on an hourly basis. (Tr. 220.) Dr. Forbes wrote that these hourly breaks would need to be five to ten minutes in length each time. (Tr. 220.) This limitation is significant because the vocational expert who

---

[1] The court also notes that in evaluating Plaintiff's RFC, the ALJ wrote that Edwin Christensen, Ph.D., a psychologist, who met with Plaintiff during a consultative evaluation requested by the Disability Determination Service, diagnosed Plaintiff with major depression, recurrent, and a global assessment of functioning at 48, which means serious impairment in social, occupational, or school functioning. (Tr. 16.) In addition, Plaintiff testified at her hearing before the ALJ that she had been referred to a psychiatrist by Dr. Barnes and that she had seen that psychiatrist for about a year during 2000. (Tr. 265-66.)

testified at Plaintiff's hearing said that such a limitation would eliminate "all work." (Tr. 285.)

The ALJ appears to have accepted Dr. Forbes' opinions in one statement, and then to have rejected them in another. However, because Dr. Forbes' specific opinions are not individually addressed, the ALJ's statements and general application of Dr. Forbes' opinions leave the court wondering how the ALJ interpreted Dr. Forbes' two particular opinions at issue on this appeal. The ALJ wrote, "The Administrative Law Judge accepts Dr. Forbes analysis of claimant's mental capacity as being consistent with the medical evidence as a whole. It does not suggest that claimant is incapable of maintaining sustained, full-time substantial gainful activity." (Tr. 17.) Thus, the ALJ appears to have generally accepted Dr. Forbes' opinion regarding Plaintiff's mental capacity, but to have ignored Dr. Forbes' opinion regarding Plaintiff's residual disease, as indicated by the box Dr. Forbes checked, as described above. Instead, regarding the ALJ's first opinion at issue on this appeal, the ALJ did not at all address the box Dr. Forbes checked on the form. On the contrary, earlier in his opinion, the ALJ specifically found that the medical evidence of record did not document evidence of a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause Plaintiff to decompensate. (Tr. 15.) The ALJ wrote that in reaching this

finding, he considered the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and who reached the same conclusion. The ALJ did not say he considered the opinions of Plaintiff's treating physician in making this finding.

Second, regarding Dr. Forbes' second opinion--that Plaintiff would need to take five to ten minute hourly breaks--the ALJ made no comment at all about it. The ALJ discussed in detail Dr. Forbes' opinion regarding Plaintiff's ability to sit, stand, and so on (Tr. 17), but the court has not found any discussion in the ALJ's opinion regarding Dr. Forbes' opinion that Plaintiff would need to take five to ten minute hourly breaks.

Defendant argues that the ALJ was not required to engage in a line-by-line recitation of the evidence. The court agrees. However, the two opinions set forth by Plaintiff on this appeal are critical to the determination of Plaintiff's disability, as described above. The ALJ's failure to address those two opinions requires the court to speculate as to why the ALJ did not accept those opinions, an activity in which the court does not engage. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

"According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th

Cir. 2004); see also 20 C.F.R. § 404.1527(d)(2). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling' weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

For a treating physician's opinion to be given controlling weight, it must be both (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial evidence in the record. See id. If the treating physician's opinion does not meet both of these criteria, it should not be given controlling weight. See id.

However, even if a treating physician's opinion is not entitled to controlling weight, it is still "'entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" Id. (citing Social Security Rule (hereafter referred to as "SSR") 96-2p, 1996 WL 374188, at *4). Those factors are:

> "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."

Watkins, 350 F.3d at 1301 (quoting Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).

After considering the six factors set forth in the C.F.R., the ALJ must give good reasons in the ALJ's decision for the weight ultimately given to the treating physician's opinion. See id. If the ALJ rejects the treating physician's opinion entirely, the ALJ must give specific, legitimate reasons for so rejecting it. See id.

In this case, the ALJ did not address the two specific but critical opinions given by Dr. Forbes regarding Plaintiff's limitations, as set forth above. Although Defendant argues that the ALJ's decision is supported by the opinions of the agency physicians, those physicians' opinions are not entitled to greater weight than the opinions of Plaintiff's treating physician unless the ALJ gives specific and legitimate reasons for giving them greater weight. Here, the ALJ failed to articulate the weight, if any, he gave Dr. Forbes' two critical specific opinions. The ALJ also failed to explain the reasons for assigning that weight or for rejecting the opinion altogether. The court cannot simply presume the ALJ applied the correct legal standards in considering Dr. Forbes' opinion. As a result, the court must remand this case because it cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to Dr. Forbes' opinion. See Watkins, 350 F.3d at 1300-01. On remand, the ALJ must engage in the proper analysis to determine and explain the weight given to Dr. Forbes' entire opinion regarding Plaintiff's disability, including the two specific opinions discussed above.

## CONCLUSION

Based on the above analysis, **THE COURT HEREBY ORDERS** that this case be **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this order.

DATED this 16th day of November, 2005.

BY THE COURT:

Samuel Alba
United States Chief Magistrate Judge